## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAID & GOLDBERG, LLP,<br><br>   Plaintiff,<br><br>   vs.<br><br>AKSHITA BANERJEE, THE SASB<br>IRREVOCABLE TRUST DATED JUNE<br>14TH, 2014, and ANANT J. GANDHI AS<br>TRUSTEE and ALL SUCCESSOR<br>TRUSTEES,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. *2:21-cv-961*<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) ELECTRONICALLY FILED |

### COMPLAINT FOR EQUITABLE AND LEGAL RELIEF

Plaintiff, Sadis & Goldberg, LLP, by its undersigned counsel, hereby sues Akshita Banerjee, the SASB Irrevocable Trust Dated June 14, 2014, and Anant J. Gandhi as Trustee and any successor Trustees and alleges as follows:

### PRELIMINARY STATEMENT

1. The Defendants in this action have been using fraud to prevent Sadis & Goldberg, LLP ("Sadis" or "Plaintiff") from collecting on its legal fees for at least seven years. They have lied under oath, destroyed documents, and refused to accept service. But most egregious has been their repeated fraudulent transfers—constantly moving money and assets from one family member to another and one entity to another to prevent Plaintiff from collecting the debt owed. Now Plaintiff has discovered that Defendant Akshita Banerjee ("Mrs. Banerjee") and her husband, Sumanta Banerjee ("Mr. Banerjee"), created the SASB Irrevocable Trust Dated June 14th, 2014 (the "SASB Trust") and—with the assistance of Mrs. Banerjee's father, Defendant Anant J.

Gandhi ("Gandhi")—repeatedly fraudulently transferred money and assets to the SASB Trust to prevent Sadis' collection of its debt.

2.    These fraudulent transfers must be set aside and/or the SASB Trust's funds and property must be used to satisfy the Banerjees' Judgment debt of $539,956 plus interest. Because Gandhi, the Trustee, participated in the conspiracy to use the SASB Trust for fraudulent purposes and conduct the fraudulent transfers a receiver must be appointed to oversee the distribution of SASB Trust's fund and property until the debt is satisfied.

## PARTIES

3.    Sadis is a law firm and Limited Liability Partnership organized under Delaware law, authorized to do business in the state of New York, and whose principal place of business is 551 5th Avenue, 21st Floor, New York, New York 10176.

4.    All of the partners of Sadis are citizens of New York or New Jersey. None reside in Pennsylvania.

5.    Defendant Mrs. Banerjee is a citizen of Pennsylvania, with a residence of 1514 Cook School Rd., Pittsburgh, PA 15241.

6.    Defendant the SASB Trust is a Pennsylvania Trust created on June 14, 2014 by Mrs. Banerjee and her husband, Mr. Banerjee. The initial address for the SASB Trust was 304 Harvester Circle, Pittsburgh, PA 15241—the home address Mr. and Mrs. Banerjee at the time the SASB Trust was formed. The SASB Trust's current address is either 1514 Cook School Rd., Pittsburgh, PA 15241 or 2007 Overlook Ct., Canonsburg, PA 15317.

7.    Defendant Gandhi is a citizen of Pennsylvania, with a residence of 2007 Overlook Ct., Canonsburg, PA 15317. Gandhi is the father of Akshita Banerjee, the father-in-law of Sumanta Banerjee and the Trustee of the SASB Trust.

2

## JURISDICTION AND VENUE

8.      The amount in controversy, without interest and costs, exceeds $75,000 pursuant to 28 U.S.C. § 1332(a).

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between the parties. Plaintiff is a citizen of New York and New Jersey by virtue of the fact that all of its partners are citizens of these states and the Defendants are citizens of Pennsylvania.

10.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) and (2) because Defendants are residents in the Western District of Pennsylvania and the fraudulent transfers at issue occurred in this district.

## FACTUAL BACKGROUND

I.      **MR. BANERJEE USES SADIS' LEGAL SERVICES BUT DOES NOT PAY HIS LEGAL BILLS AND SADIS FILES CIVIL ACTIONS AGAINST MR. BANERJEE IN THE SOUTHERN DISTRICT OF NEW YORK**

11.     Plaintiff is a law firm that *inter alia* represents parties in matters of litigation, mediation, and other forms of alternative dispute resolution.

12.     In March 2008, Mr. Banerjee engaged Sadis to represent him in a lawsuit filed against Mr. Banerjee by his former employer, Tuckerbrook Alternative Investments, LP ("Tuckerbrook").

13.     Sadis provided legal services to Mr. Banerjee from March 2008 until June 2009, during which time Mr. Banerjee accumulated unpaid legal fees of $379,652.37.

14.     After various attempts to collect the unpaid balance, on October 18, 2013, Sadis filed a Summons and Complaint against Mr. Banerjee in the Southern District of New York ("SDNY") under Docket Number 13-cv-7355. The Complaint sought to collect the $379,652.37 owed, plus contractual interest at a rate of 1% a month (the "Original Debt").

3

15.     Sadis retained a process server to serve Mr. Banerjee at his Pittsburgh home.  The process server served Mrs. Banerjee, who initially accepted service of the summons and complaint on November 5, 2013.  Mrs. Banerjee confirmed her identity as the defendant's wife, and was served in the presence of a police officer.  Mrs. Banerjee was therefore aware of Sadis' claim against her husband as of November 5, 2013—at the latest.

16.     However, in a sudden about-face, Mrs. Banerjee later wrote a letter to Sadis (which she also filed with the district court) in which she claimed that Mr. Banerjee did not reside in the United States, but rather, was "a permanent resident of India and has been so for over four years" and was "an overseas citizen of India."

17.     Relying on Akshita Banerjee's representation—which Sadis later discovered was false—Sadis attempted to serve Mr. Banerjee at the Indian address provided by Mrs. Banerjee through India's Central Authority in accordance with the Hague Service Convention.  Once again, the complaint was initially accepted by a family member, this time Mr. Banerjee's mother. However, she too returned the papers saying that Sumanta Banerjee did not reside at her address.

18.     After a dismissal without prejudice, Sadis re-filed its action in the SDNY on February 13, 2014, under Docket Number 14-cv-00913, and sent copies of the court filings to Mr. Banerjee by email and FedEx.

19.     The district court subsequently approved alternative service on Mr. Banerjee by email.

## II.    THE BANERJEES FORM THE SASB TRUST AND TRANSFER THEIR ASSETS INTO THE TRUST TO PROTECT THEM FROM COLLECTION

20.     In or around May 2014, Mrs. Banerjee formed SSA Capital Advisors, LLC ("SSA Capital"), a Delaware limited liability company.  SSA Capital is a management company that Mr. and Mrs. Banerjee operate together managing various real estate investment businesses.

21.     On June 14, 2014, after having been served with both SDNY complaints, Mr. and Mrs. Banerjee formed the SASB Trust, naming their youngest child—a minor—as the beneficiary and Gandhi as the Trustee. Mr. and Mrs. Banerjee both contributed assets into the SASB Trust in 2014 and have continued to do so since that time.

22.     As explained below, Plaintiff did not discover when the SASB Trust was formed or that both Mr. and Mrs. Banerjee transferred assets into it in June of 2014—or subsequent to June of 2014—until Defendants revealed this information in January and February of 2021.

23.     On information and belief, the Banerjees formed the SASB Trust for the specific purpose of preventing Sadis from collecting on the Original Debt.

24.     Although Gandhi was nominally the Trustee and the Banerjees' daughter was nominally the beneficiary, in reality Mr. and Mrs. Banerjee operated the SASB Trust to hold their investments in a manner that would protect them from collection.

25.     Gandhi knew the SASB Trust was a fraud, intended to protect the Banerjees' assets from debt collection. Instead of acting in the interests of the SASB Trust, Gandhi conspired with his daughter and son-in-law to create the illusion of a legitimate trust. Gandhi signed off on the Banerjee's investments of the SASB Trust's funds and gave the Banerjees the SASB Trusts distributions and/or gave them authorization to access the SASB Trust's bank accounts.

26.     On March 30, 2015, the Banerjees—together with a group of private investors—created SSA Capital Partners I, LLC which operated at least one mobile home park. The SASB Trust was an investor in SSA Capital Partners I and numerous subsequent entities, including SSA Capital Partners II; SSA Capital Partners III GP, LLC; SSA Capital Partners IV, LLC; SSA Family Fund, LLC; SSA Capital Partners III Five Parks, L.P.; and SSA POH, LLC; among others.

27.     Each and every one of these investments was made with funds that the Banerjees fraudulently transferred into the SASB Trust.

**III.    IN PROSECUTING THE SDNY ACTION, PLAINTIFFS DISCOVER MR. BANERJEE'S FRAUDULENT TRANSFERS TO MRS. BANERJEE**

28.     On February 6, 2015, the SDNY granted Sadis' motion for a default judgment and a judgment of $383,448.90 was entered on April 28, 2015.

29.     Mr. Banerjee appealed the SDNY's denial of his motion to set aside the judgment, and the United States Court of Appeals for the Second Circuit remanded to the district court to determine Mr. Banerjee's domicile at the time of service of the Complaint.

30.     Through discovery related to the issue of Mr. Banerjee's domicile, Sadis discovered that, contrary to Mr. Banerjee's representations before the SDNY, the State of Pennsylvania's Department of Revenue believed that Mr. Banerjee had earned $431,610 in 2014 and had filed a tax lien for the income taxes that Mr. Banerjee should have paid on that money.

31.     During his deposition on February 14, 2019, Mr. Banerjee testified that the $431,610 was money he earned from the sale of stocks and bonds and that it was sent to him as a check in 2014.

32.     Mr. Banerjee further testified that he endorsed the check over to his wife, Mrs. Banerjee.  Mr. Banerjee received no consideration from his wife for this transfer.

33.     At the same deposition, Mr. Banerjee testified that he earned $108,346 in 2013 from the sale of stocks and bonds.

34.     As with the $431,610 payment, Mr. Banerjee received the $108,346 in a check, which he endorsed over to his wife in 2013.  Mr. Banerjee received no consideration from his wife for this transfer.  And Mr. Banerjee further testified that he had no assets in his name in the United States since June of 2012.

6

35.     On March 29, 2019, at deposition, Mrs. Banerjee also testified that she had received the $539,956 from her husband in 2013 and 2014.

36.     On March 29, 2019, at the same deposition, Mrs. Banerjee also testified that SSA Capital "is just me" and that SSA Capital's income "get rolled up to me."

37.     Upon information and belief, Mrs. Banerjee transferred portions of the $539,956 to the SASB Trust and/or the various businesses listed in paragraph 26 above.

38.     These transfers from Mr. Banerjee to his wife, occurring well after Mr. Banerjee was a debtor to Sadis, after Mr. Banerjee had been sued by Sadis in the SDNY, and when Mr. Banerjee had no assets in the United States, were fraudulent transfers under New York and Pennsylvania law.

## IV.   SADIS FILES AN ACTION FOR FRAUDULENT TRANSFER AGAINST THE BANERJEES IN THE WDPA.

39.     On December 31, 2019, Sadis filed an action in the United States District Court for the Western District of Pennsylvania raising claims of fraudulent transfer against both Sumanta and Akshita Banerjee under Pennsylvania and New York law at Civil Action No. 2:19-CV-01682 (the "WDPA Action").

40.     Sumanta and Akshita Banerjee failed to respond to the complaint, and, on February 20, 2020, Sadis obtained a judgment against Sumanta and Akshita Banerjee for $539,956.00 plus costs (the "Judgment").

41.     On July 15, 2020, the Banerjees filed a Motion to Set Aside the Default claiming that they had never been served and were unaware of the WDPA Action until June 15, 2020. This was false.

42.     In addition to affidavits of service from the neutral process server showing personal service on Mrs. Banerjee on January 10, 2020, Mrs. Banerjee had left a voicemail for Sadis'

counsel on January 31, 2020 requesting an extension to answer the WDPA Action Complaint—

neatly demonstrating that she was fully aware of the WDPA Action.

43.     On July 28, 2020, in a Memorandum denying Defendants' Motion to Set Aside the

Default Judgment, Judge Schwab found that Defendants failed to allege any meritorious defenses

and highlighted "a pattern of tactics evidencing culpability of Defendants" and efforts to "shift

assets in an attempt to become judgment proof." *See* July 28, 2020 Memorandum Order Denying

Motion to Set Aside Default Judgment in Case No. 19-CV-1682, a copy of which is attached hereto

as Exhibit A, at 8-9.

44.     Despite the Judgment against them in the WDPA action, Mr. and Mrs. Banerjee

refused to pay their debt.

## V.     SADIS DISCOVERS THAT THE SASB TRUST WAS CREATED AFTER SADIS BROUGHT THE SDNY ACTION AND THAT MRS. BANERJEE FRAUDULENTLY TRANSFERRED SSA CAPITAL INTO THE SASB TRUST

45.     On January 8, 2021, in an effort to enforce the Judgment and collect on the debt,

Sadis filed a motion to impose a constructive trust on money flowing from SSA Capital to the

Banerjees or to the SASB Trust for the benefit of the Banerjees (the "Enforcement Motion").

46.     In response to this motion and subsequent related filings the Banerjees revealed that

in June 2014, after Sadis filed the SDNY Action against Mr. Banerjee, Mr. and Mrs. Banerjee

formed the SASB Irrevocable Trust ("SASB Trust"), naming Anant Gandhi, Mrs. Banerjee's

father, as the Trustee.

47.     The formation of the SASB Trust in June 2014 occurred well after Mr. Banerjee

became a debtor to Sadis and well after Mrs. Banerjee knew that Mr. Banerjee owed money to

Sadis because she accepted service of the original Complaint in the SDNY Action in November

of 2013.

48.     Each and every transfer of Mrs. Banerjee's assets into the SASB Trust occurring after its formation was made for the purpose of hiding his assets from creditors and is a fraudulent transfer.

49.     In subsequent filings in response to the Enforcement Motion, the Banerjees also claimed that although Mrs. Banerjee had once been the sole the member of SSA Capital, on January 1, 2019, Mrs. Banerjee had transferred her entire interest as managing member of SSA Capital to the SASB Trust. *See* February 4, 2021 Reply in Support of Defendants' Motion to Strike or, Alternatively, Motion for A More Definitive Statement in Case No. 2:19-CV-1682, a copy of which is attached hereto as Exhibit B, at 3, 6.

50.     This claim however is contradicted by Mrs. Banerjee's March 20, 2019 deposition testimony in connection with the SDNY Action.  At her deposition, Mrs. Banerjee testified that SSA Capital is "just me."

51.     Further, on June 22, 2020, four months after the Judgment in the WDPA Action was entered against her, Mrs. Banerjee signed a Foreign Registration Statement with the Pennsylvania Department of State as the "Managing Member" of SSA Capital. *See* Pennsylvania Department of State Foreign Registration Statement for SSA Capital Advisors LLC, a copy of which is attached hereto as Exhibit C, at 2.

52.     Thus, Mrs. Banerjee either committed perjury during her March 29, 2019 deposition about the status of her interest in SSA Capital and filed a false registration statement or she committed perjury in her declaration filed in the WDPA Action and filed a backdated transfer document because she did not transfer her interest in SSA Capital to the SASB Trust until after Sadis obtained the Judgment in the WDPA Action against Mrs. Banerjee.

53.     However, January 1, 2019 was after Sadis had requested and subpoenaed Mrs. Banerjee's documents, seeking discovery from Mrs. Banerjee about SSA Capital and other businesses and about the tax lien the Pennsylvania Department of Revenue had filed on Mr. Banerjee relating to the $431,610 he had earned in 2014.  *See* November 5, 2018 Letter re Document Requests, a copy of which is attached hereto at Exhibit D, at Req. No. 4; December 28, 2018 Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises is Civil Action, a copy of which is attached hereto as Exhibit E, at Req. Nos. 3, 7–8.  Therefore, even if it was her deposition testimony that was perjurious and the registration statement was false and Mrs. Banerjee really did transfer SSA Capital into the SASB Trust in January of 2019, any such transfer would have necessarily been in anticipation of Sadis discovering the details of the prior fraudulent transfers and Mrs. Banerjee's businesses and bringing an action upon the fraudulent transfers from Mr. Banerjee to his wife.

54.     Therefore, at the time Mrs. Banerjee transferred her interest in SSA Capital to the SASB Trust, she was a debtor to Sadis and conspired with her husband and father-in-law to make the transfer with the intent to shield her assets from recovery.

55.     Mrs. Banerjee did not receive any consideration for the transfer.

**VI.    THE BANERJEES REFUSE TO COMPLY WITH THE COURT'S ORDERS AND CONTINUE THEIR PATTERN OF TRANSFERRING ASSETS TO PROTECT THEM FROM COLLECTION**

56.     On February 9, 2021, the Honorable Judge Schwab granted the Enforcement Motion and ordered a constructive trust "upon any and all payments" made from SSA Capital to the Banerjees or to the SASB Trust for the benefit of the Banerjees (the "Enforcement Order").

57.     On February 12, 2021, Sadis served a copy of the Enforcement Order on Gandhi as the Trustee of the SASB Trust.  The letter attaching the Enforcement Order notified Gandhi that

the Enforcement Order "imposed a constructive trust over any and all monies flowing to Sumanta Banerjee or Akshita Banerjee from SSA Capital … or the SASB Irrevocable Trust."

58.     On February 23, 2021, counsel for SSA Capital and the SASB Trust responded claiming that the Enforcement Order "does not impose a constructive trust over any and all monies flowing to Sumanta or Akshita Banerjee from the SASB Trust" but only "payments made by SSA Capital to the SASB Trust for the benefit of Sumanta or Akshita Banerjee."

59.     Additionally, counsel claimed that the Enforcement Order placed no restrictions on Gandhi's conduct in administering the SASB Trust because he was not a defendant in the WDPA Action and the SASB Trust was not under the WDPA's jurisdiction.

60.     To date Gandhi has continued to ignore the Enforcement Order and continues to provide distributions from the SASB Trust to the Banerjees—apparently on the grounds that he is not subject to the Enforcement Order and that it is not "for the benefit of Sumanta or Akshita Banerjee" but the benefit of their daughter.

61.     In late February of 2021, Plaintiff discovered that SSA Capital and the SASB Trust had accounts with Bank of America.

62.     Plaintiff sent a letter to Bank of America asking them to freeze any flow of money from those accounts to either of the Banerjees.  Plaintiff subsequently discovered that Akshita Banerjee also maintained an account with Bank of America and, on or about March 5, 2021, served a writ of execution on Bank of America.

63.     On March 8, 2021, Steven Cherin, an attorney and investor with the Banerjees in SSA Capital Partners I, LLC and SSA Capital Partners III GP, LLC, sent a letter asking Bank of America to unfreeze accounts belonging to those entities, and other entities controlled by the Banerjees (together the "SSA Entities"), including SSA Capital and the SASB Trust.

64.     On or about March 9, 2021, Bank of America unfroze the accounts of the SSA Entities but also unfroze Mrs. Banerjee's account. On information and belief, as soon as Mrs. Banerjee's account was unfrozen she immediately transferred the funds in her account elsewhere or out of her name.

65.     By March 17, 2021, Mrs. Banerjee had transferred out all of her money out of Bank of America in a further attempt to prevent Sadis from collecting the Judgment.

66.     Defendants' fraudulent transfers and persistent refusal to pay the Judgment against them is in keeping with Mr. Banerjee's stated intent to never pay Plaintiff the debt he owes.   On October 23, 2019, Mr. Banerjee told Sadis' counsel—just prior to a scheduled conference in the SDNY Action—that even if Sadis were to win that lawsuit, Sadis would never be able to collect on its judgment because Sadis could not access Mr. Banerjee's assets.

67.     To date, SSA Capital, the SASB Trust, and the Banerjees have not made any payments to Sadis in violation of the Judgment and the Enforcement Order.

68.     These attempts to hide their asset and refusal to pay their debts is part of a larger pattern of Defendants' behavior.

69.     For example, in the years leading up to 2009-10, Mr. Banerjee transferred almost all of his assets—millions of dollars—out of his name, primarily to his parents in India which they put in a trust for which Mr. Banerjee was the sole beneficiary (the "India Trust").

70.     At the time, Mr. Banerjee was being sued, in multiple lawsuits, by Tuckerbrook. The Banerjees hired an asset protection specialist, Adam Chodus, to make it seem like the Banerjees "did not have any assets."

71.     In addition to transferring millions of dollars into the India Trust, the Banerjees created an entity, ZBAC, LLC and transferred their Connecticut house into it.

72.     After years of effort, Tuckerbrook eventually agreed to settle their claims with Mr. Banerjee on the condition that he sit for a deposition and testify truthfully.

73.     During the deposition, Mr. Banerjee was asked about an affidavit he had signed in July of 2008, claiming that he had very few assets. Mr. Banerjee testified that he transferred his money to his father as a gift because his father was "ailing and needed money."

74.     This was a lie, because although Mr. Banerjee's father was ill, Mr. Banerjee's parents were independently wealthy, had themselves put many more millions into the India Trust than Mr. Banerjee had, and owned numerous properties in India.

75.     On May 9, 2012, an independent Arbitrator, Margaret Hinkle, found that portions of Mr. Banerjee's deposition testimony were untruthful—including, his testimony about "his efforts to conceal assets and misrepresent his financial condition"—and voided the settlement. *See* May 9, 2012 Final Award of Arbitrator Margaret R. Hinkle in the JAMS Arbitration matter of *Tuckerbrook Alternative Investments L.P. v. Sumanta Banerjee*, No. 1400013543, a copy of which is attached hereto as Exhibit F, at 10-13.

76.     Although Mr. Banerjee's is independently wealthy—he is the sole beneficiary of a trust that controls millions and millions of dollars, manages the trust's assets, and together with his wife controls and uses the hundreds of thousands earned by the SASB Trust they formed—on June 1, 2021, he filed for personal bankruptcy. This is just one more attempt to abuse to legal system to avoid paying his debt.

## COUNT I
## FRAUDULENT TRANSFER UNDER THE PENNSYLVANIA UNIFORM FRAUDULENT TRANSFER ACT, 12 PA.C.S. § 5104 AGAINST ALL DEFENDANTS

77.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

78.     Sumanta Banerjee is a debtor to Sadis as defined under the Pennsylvania Uniform Fraudulent Transfer Act (the "Act") and has been such a debtor since 2008 and been a Defendant in actions brought by Sadis since 2013.

79.     Defendant Akshita Banerjee is a debtor to Sadis as defined under the Act and has been such a debtor since at least December 2019.

80.     Plaintiff Sadis is a creditor of Mr. and Mrs. Banerjee as defined under the Act and has been such a creditor since 2008 and 2019, respectively.

81.     Mr. and Mrs. Banerjee formed the SASB Trust in June of 2014 and transferred funds into the SASB Trust with actual intent to prevent those funds from being collected by Sadis.

82.     In February of 2020 a Judgment was entered against Mr. and Mrs. Banerjee in the WDPA Action in the amount of $539,956.

83.     Based on Mrs. Banerjee's deposition testimony in March of 2019 and the registration statement she filed in June of 2020, Mrs. Banerjee was the sole member of SSA Capital until after the Judgment in the WDPA Action.

84.     Therefore, the transfer of Mrs. Banerjee's interest in SSA Capital to the SASB Trust occurred after she was a judgment debtor to Sadis.

85.     In the alternative—assuming Mrs. Banerjee lied under oath during her deposition and filed a false registration statement with Pennsylvania—Mrs. Banerjee transferred her interest in SSA Capital in January of 2019.  By January 1, 2019—having received discovery requests regarding the formation and operation of SSA Capital and the tax lien the Pennsylvania Department of Revenue had filed on Mr. Banerjee relating to the $431,610 he had earned in 2014— Mrs. Banerjee anticipated the imminent discovery of the fraudulent transfers she received from her husband.  In anticipation of Sadis filing an action upon those transfers, Mrs. Banerjee

14

transferred her interest in SSA Capital to the SASB Trust with the actual intent to prevent those funds from being collected by Sadis.

86.     Mr. and Mrs. Banerjee received no consideration from the SASB Trust for these transfers.

87.     Both Mr. and Mrs. Banerjee were fully aware of the debt Mr. Banerjee owed to Sadis at the time of the transfers to the SASB Trust.

88.     The Banerjees transferred the funds, and the SASB Trust accepted the funds, with actual intent to prevent those funds from being collected by Sadis and other creditors of Mr. Banerjee or future creditors of Mrs. Banerjee.

89.     Sadis discovered the existence of these fraudulent transfers after January 1, 2021.

90.     These transfers were all fraudulent transfers under 12 Pa.C.S. § 5104(a) and therefore voidable.

91.     As a result of Defendants' actions, Sadis is entitled to a voidance of the transfers, an injunction against further transfers of the Defendants' funds, assets, and real property, and the funds, assets, and real property of the SASB Trust should be used or be sold to pay the debt, including interest, owed to Sadis.

## COUNT II
## CIVIL CONSPIRACY TO COMMIT FRAUDULENT TRANSFERS AGAINST ALL DEFENDANTS

92.     Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs as if fully set forth herein.

93.     Mr. and Mrs. Banerjee acted in concert with Gandhi, as the Trustee of the SASB Trust with a common purpose of transferring assets into the SASB Trust for the unlawful purpose of preventing those funds from being collected by Sadis.

15

94.     In furtherance of this purpose, Mr. and Mrs. Banerjee transferred funds into the SASB Trust, and the SASB Trust accepted the funds, after Mr. Banerjee became a debtor to Sadis and after Mrs. Banerjee either became a debtor to Sadis or anticipated becoming a debtor to Sadis. Gandhi signed off on these transfers.

95.     Gandhi also conspired with the Banerjees to allow the Banerjees complete control of the investment decisions of the SASB Trust. Gandhi gave the Banerjees the SASB Trust's distributions and/or gave them authorization to access the SASB Trust's bank accounts.

96.     Defendants acted with the specific intent to prevent those funds from being collected by Sadis.

97.     As a result of Defendants' actions, Sadis incurred damages of $539,956 plus interest.

98.     As a result of Defendants' actions, Sadis is entitled to a voidance of the transfers, an injunction against further transfers of the Defendants' funds, assets, and real property, and the funds, assets, and real property of the SASB Trust should be used or be sold to pay the debt, including interest, owed to Sadis.

## COUNT III
## AIDING AND ABETTING FRAUDULENT TRANSFERS AGAINST ANANT J. GANDHI

99.     Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs as if fully set forth herein.

100.    Gandhi had knowledge that the SASB Trust was created by the Banerjees for an unlawful purpose and assisted the Banerjees in carrying out that unlawful purpose.

101.    Gandhi knew that the Banerjees created the SASB Trust with the intent to protect the Banerjees' assets from debt collection by Sadis.

16

102.    Instead of acting in the interests of the SASB Trust, Gandhi assisted his daughter and son-in-law in creating the illusion of a legitimate trust.

103.    Gandhi signed off on the Banerjees' investments of the SASB Trust's funds and gave the Banerjees the SASB Trust's distributions and/or gave them authorization to access the SASB Trust's bank accounts.

104.    These affirmative actions demonstrate the Gandhi actively assisted Mr. and Mrs. Banerjee in their attempts to unlawfully shield their assets from creditors.

105.    As a result of Gandhi's actions, Sadis incurred damages of $539,956 plus interest.

106.    As a result of Gandhi's actions, Sadis is entitled to an attachment of—or levy on—the assets of SASB Irrevocable Trust, and the imposition of a constructive trust over the assets held by the SASB Trust and an appointment of a receiver to take charge of the SASB Trust until the debt can be repaid.

## **REMEDIES**

WHEREFORE Plaintiff respectfully demands voidance of Sumanta Banerjee's and Defendant Akshita Banerjee's transfers to Defendant SASB Trust and any subsequent transfers of SASB Irrevocable Trust, an attachment of—or levy on—the assets of SASB Irrevocable Trust, and the imposition of a constructive trust over the assets held by the SASB Trust and an appointment of a receiver to take charge of the SASB Trust until the debt can be repaid, an injunction against future dispositions by any Defendant of any assets, attorney fees, interest, and any other relief the Court may deem just and proper.

MEYER, UNKOVIC & SCOTT LLP

By: _/s/ Robert E. Dauer_____
    Robert E. Dauer
    PA I.D. #309011
    red@muslaw.com

Kate E. McCarthy
PA I.D. #325771
kem@muslaw.com

Henry W. Oliver Building
535 Smithfield Street, Suite 1300
Pittsburgh, PA 15222-2315
(412) 456-2800
(412) 456-2864/Fax

ATTORNEYS FOR PLAINTIFF